argument not to exceed 15 minutes per side. Mr. Silverstein, you may proceed for the appellant. Good morning. Good morning, Your Honors. May it please the Court. Michael Silverstein on behalf of Appellant. I'd like to reserve four minutes for rebuttal. Johnny Taylor met with his attorney just once for the five months between his preliminary examination and trial. That meeting lasted a total of ten minutes. At that meeting they accomplished two things. Johnny Taylor asked his attorney if there was a video of the crime of which he was accused. His attorney, Alfred Brandt, said no. That was not true. And Alfred Brandt had Johnny Taylor call his mother for a suit to wear at trial the next day. That was it. Johnny Taylor's counsel completely was absent during the pre-trial period. And this rendered his counsel ineffective under the Sixth Amendment. Whether we look at this as Strickland or chronic, it is ineffective. Under chronic, it would be ineffective and we could presume prejudice because he was completely absent during the critical pre-trial period. Johnny Taylor wrote to his counsel many times asking that he investigate various leads, but Alfred Brandt did nothing. He didn't respond. There are affidavits on the record testifying to this, to what testimony he could have gotten. Testimony that would have shown that Ms. Banks was biased. Did he make a request for documents? Wasn't there a discovery request? Or am I remembering that incorrectly? Yes, Judge Strange, there was a request for discovery that the state court noted in their opinion. They describe it as detailed, but I think we have reason to doubt how detailed that might be. The only thing we have on the record is a note that he made a request for discovery a few days after the preliminary examination. Any request for discovery, as the state court actually notes, we don't know whether or not he actually received any discovery, whether he followed up to get that discovery, what efforts he made after making just a request for discovery. Any request for discovery, we would think, would show up the basic evidence of a video of trial, which was a key point of the state's case of showing what the perpetrator actually looked like. There's no question it was minor representation, but I guess my concern is what category, what analysis best fits this? It is problematic when somebody does a terrible job, but does a few things. It's difficult to place them in the completely absent category, so the question here is, let's assume that maybe they don't fit within chronic. What's your best argument for why he failed under Strickland? Assuming he doesn't fit within chronic, he didn't do any investigation following up on what Taylor was pointing to. This court has said that it is especially disturbing if counsel doesn't pursue evidence that is readily available to them. Taylor asked him to talk to his brother, who would have testified that he had arrived at Ms. Banks' home at 1130 a.m., not 230 a.m., as Ms. Banks testified, and there was various testimony he could have gotten to show that he had known Ms. Banks for a long period of time, not barely knew her as Ms. Banks testified to. How about prejudice? That seems like the trickiest part for me. The $2 bill, the green jacket. I mean, the $2 bill in particular. What do you do about that? Well, I think you have to look at the state's case holistically, in that it falls apart without Ms. Banks' testimony. It's Ms. Banks' testimony that links Taylor to the crime. All the state has without Ms. Banks is a videotape of someone committing a crime, we never see their face, and finding Johnny Taylor. I mean, circumstantial evidence is allowed, right? Yes. Isn't that pretty powerful circumstantial evidence? I think it becomes less powerful if there had been evidence on the record. How did the $2 bill end up where he... How does that happen? What's the theory for that? Well, the $2 bill was only in the room where Johnny Taylor was found, and remember that Johnny Taylor has... How does that get there? Someone else? Yes, someone else. There would have been an alternate perpetrator that Johnny Taylor's counsel could have portrayed. Johnny Taylor, as is on the record, he testified that he was sleeping when Ms. Banks' son came in shortly before the cops arrived and ran back to that room. It is his belief that it is the son that perpetrated the crime. And that would provide plenty of motive for Ms. Banks to lie about when Johnny Taylor arrived at her home. Well, continuing on this notion of prejudice, though, in addition to the $2 bill and the fact that he's found in the bedroom where the $2 bill is, and if I recall correctly, he was actually in the closet or hiding in some fashion, wasn't there also evidence that while you couldn't see the face of the person in the video, that he also had on a jacket that was similar, if not the same, as the jacket that is seen in the video? Well, there is also some evidence on the record to suggest that's not true. There is evidence on the record to suggest that the jacket was just found in that same room and that he didn't have it. So this allows the theory of the son, but why is he in the closet? He was in the closet because he was out past parole and the cops had arrived at a house that he was sleeping in and he didn't want to be caught. It was a moment, it was something that anyone would do that is afraid to be caught after parole. He had been convicted of several crimes. He was still on parole. He didn't want to be caught, so he hid in the closet. It's a wrong case, wrong time scenario. And you can also look at, there was evidence that Johnny Taylor's attorney didn't look at in terms of medical history. Johnny Taylor had been shot and suffered a blood clot and restless leg syndrome and could not have traveled from the gas station to Ms. Banks' home in the amount of time under the state's theory. If that testimony had been presented, that would have been a huge blow to the state's case and brought up a reasonable opportunity that something else could have happened. And we also need to keep in mind that when we're thinking about prejudice, it's not just asking whether there was a reasonable probability that the jury would do something else. We have to look at the trial holistically to ask, did Johnny get a fair shot? What is the fundamental fairness that is happening in this trial here? I would submit that there was none. When you don't talk at all to your counsel and your counsel doesn't follow any kind of leads whatsoever, your trial is inherently unfair. You inherently can't pursue any kind of alternate evidence to present other theories. How do you respond to the claim that some of the people he wanted to participate at trial, that there were reasons that their evidence could not be used? I know there was a claim that Banks' cousin's evidence would have been inadmissible. And then, of course, you've got this really difficult burden of counsel strategy, which kind of covers the whole waterfront whenever we talk about these cases. But if the evidence that he wanted in was either inadmissible or pretty clearly in the strategy arena, how do you respond to that? So I think there are two points there. First, in terms of the strategy arena, it would only be a strategic decision if we had any evidence that Brandt had actually thought about submitting this evidence or looking at it at all. We owe no deference to Brandt's decision if he didn't actually do any kind of investigation. And there's even case law in the Sixth Circuit where some investigation doesn't suffice if it's not full. Number two, as far as the evidentiary ruling, this court doesn't need to defer to that if it can be convinced that the state Supreme Court would not have ruled the same way. I would say that's the case here. The state court said that that evidence was inadmissible because it went to a collateral issue and that Ms. Banks' testimony was really tangential. But that very same case that the state court cited also said that bias is not a collateral issue and you can submit extrinsic evidence about impeachment if you are going towards bias and interest, which is exactly what it would have been here. And then if we were to even assume that it could have been that ruling, we do owe some deference to. We don't know what other ways Brandt could have gotten this testimony in. There could have been other forms if he had investigated this. You talk to one person, then you talk to another, then you talk to another, and soon you find different ways to bring testimony in. That testimony that he could have brought in, even if it went arguably to a collateral issue, the probative value of it still could have substantially outweighed any prejudicial effect. So the fact that he didn't look at it in and of itself is evidence of prejudice because we don't know. One follow-up fact question. Am I misremembering the record? I thought that he had on the jacket that the problem with color was that it was a reversible jacket and the pictures in the video, the taping, showed that it was a greenish tone and that this was a reversible jacket, but he was wearing the one that would reverse to a green side. Is that incorrect on the record? No, I believe the part that I believe is questionable about the record is whether or not he had it on. And there's also evidence about he was bitten by a... Was it in the closet with him? It was in the closet with him. It was in the room with him. It could have been, it wasn't necessarily on him. It was in the place where he was found. There's not a dispute that the jacket actually matched the color. No, we're not disputing the jacket actually matched the color, but there is also evidence that he was bitten by a dog when he was found by a police canine, but there's also evidence about whether or not there were any dog bites on the jacket. If you're bitten by a dog so hard that you have to go to the hospital and you were wearing a jacket at the time, you would think that the jacket would have rips, some kind of bite marks. On the record, that's not clear. Just to make sure I'm understanding the point, why couldn't he not have the jacket on at that point? He could have not had the jacket on at that point. So just tell me what this reveals that helps your case. That's what I can't figure out. I mean, if the jacket's in the room, the jacket's in the room, that's sufficiently unusual that it's either the son or someone else, but why I don't get no bite marks on the green jacket. What does that prove? Well, the state was arguing that he had the jacket on when he was found, and when he was found, the dog bit him. If there are no bite marks in the jacket, then he couldn't have had it on when the police found him. But what good does that do if he admits it was in the room? If he admits he was in the room where the jacket was? If he admits the green jacket was in the room. I'm trying to figure out what's the materiality of that. Well, I think if the green jacket is in the room, the effect of that evidence is sufficiently diminished, is substantially diminished, if we have other evidence that Ms. Banks could have had, would have been interested in lying about when Johnny Taylor arrived and if we had had Johnny Taylor's testimony about Ms. Banks' son. And I see that my time's up. Okay, thank you. Mr. Schultz. Good morning, Your Honors. Good morning. May it please the Court. Jared Schultz, Assistant Attorney General, on behalf of the Respondent Board. In any habeas case, it is important to recognize the strict limitations that AEDPA places on a federal court's ability to grant relief. I think we've got the standard. Maybe talk a little bit about prejudice. He makes the point that, okay, the $2, the green jacket, that's not great. He has an explanation for the hiding, right? If you're on parole, that's understandable. It doesn't prove you did this crime. So he says it could have been the son. Why isn't that enough to help him on the prejudice point? Right. So first, absolutely it's undeniable that whoever committed this crime was in the house. The footprints in the snow led from the robbery to the house. The $2 bill, the proceeds from the robbery, the gun were found in the house. So the only way to get around that is to say that it was somebody else. He says it's the son. But the son was not found when the police arrived at the house. The son was not found in the closet, hiding under clothes. Oh, the better criminal. He left early, right? I mean, why should that make this guy pay for the price? I don't know what it proves that he's not there. Well, I guess my point is that there's overwhelming evidence that it's. . . What's the evidence of where the son was at the time of the robbery? Well, that's the point, Your Honor. It's complete speculation as to where the son was. There's no evidence that the son had any connection to this crime,  Isn't that the problem of the counsel's failure to investigate and make decisions based on information that was provided to him by his client? Well, I guess, Your Honor, I'm not sure. What would he have to investigate at that point if he doesn't know, if there's nothing about the son, there's nothing to say. . . Where he was, how he got home, when he got home, who brought him home. What did he say to the person who brought him home? Well, but you can say that about anyone in the house then. I guess what I'm saying is there is evidence that the petitioner was hiding. He's underclothes. He's in winter outdoor clothing versus the son. There's nothing. I think that you're risking alienating the jury. It's a reasonable strategy. Another way to put the point, though, it's a fair point that if he didn't do a very good investigation to figure out whether the son did it, that's problematic on prong one of Strickland. But then the burden on prong two with prejudice is to come forward with evidence today that had you done the investigation, you would have found this, that, and the other thing that made it look very likely that the son did it. So what evidence has emerged since then that either shows there's prejudice or confirms there's not prejudice? Right, so I think that's the point. There is no evidence since then that shows he is any way connected to the crime. He cannot show that a further investigation would have uncovered anything. There's nothing. He hasn't shown that if Mr. Brandt would have done this, then he would have discovered that the son was elsewhere at the time of the crime. The only thing we know about the son is that the mother testified that he was at home sleeping. He had been there, I think she said, the entire night. I'm not positive on that. But she said he was at the house sleeping. There was nothing about anything else where he was. And the petitioner, again, as you said, Your Honor, it's his burden to come forward to show prejudice, and he has shown nothing as to what counsel would have uncovered had he done a further investigation. And I think that brings me to another point, is the only thing we have to show that the petitioner actually gave this information or that counsel did not meet with him for sufficient time is his own word. There's nothing in the record that says he didn't meet with him, that there was no meeting, that they didn't consult beforehand. This is just his own self-serving affidavit in which he says that. And I guess this more so goes to the chronic point, but there is evidence on the record that this was not a complete denial. Counsel did participate in the pretrial period. Counsel conducted the preliminary examination. There was another pretrial hearing. I think we understand the chronic issue. I apologize. I guess my point is there is nothing on the record to show that he didn't further meet with his client. And, again, it's his burden of proving that his counsel did not conduct an investigation. He hasn't proven that at this point. Well, if the only evidence in the record is his affidavit, then it's an undisputed affidavit in the record that they didn't meet. Right. And I acknowledge the petitioner's argument that there's a catch-22, that if you don't, you know, you haven't presented your evidence, but you haven't been given an opportunity to present your evidence. But there is no requirement that a court hold an evidentiary hearing just because of a bare-bones affidavit that this is what happens. If that was the case, then we would have an awful lot of evidentiary hearings simply because a petitioner alleges that something out of the ordinary happened. And just a brief response to the, I believe it's the cousin's testimony, Ms. Banks' cousin's testimony who would have said, proposed testimony who would have said that he would have arrived, excuse me, that was the brother, that they knew each other for longer. The state court said that that wasn't admissible. Case law is clear, habeas law is clear, that if a state court makes a ruling on a state law, that binds this court. It's not, you can't look at what, speculate as to what the state supreme court would have held. It's any principle of state law announced on, even on direct review of that case, binds this court. And they held it's inadmissible. If the evidence is inadmissible, counsel cannot have been ineffective for failing to present that evidence. Again, I'll just, then the last point I guess I'll make is, the other component is the medical testimony. Again, there's no evidence that any medical professional or any documentation would show that he could not make it to, from the robbery to the house. Again, that's pure speculation. He hasn't come forward after the trial with any evidence saying that, that was the case that counsel, if he would have investigated, would have been able to uncover that and present it at trial. It's pure speculation. So he can't meet his burden of showing prejudice. And again, I'll just point out that Ed Paul applies to this case. There has to be no fair managers that could agree with the state court's decision. I don't think that we have that here. So unless there's any other questions, I would just ask the court to offer them. Okay, thank you. Thank you, Your Honor. Mr. Silverstein, you have your rebuttal. So, a few points, Your Honors. First, I wanted to provide just a quick case site on the state law point. It was in Johnson v. Cranes. Is this case in the brief? Yeah, this case is in the brief. Okay, go ahead. This is 198 F. 3rd, 589. It's page 593, note 3, where this court said, unless it can be convinced that the state supreme court would have decided to issue differently. So you are not completely bound to defer to the lower courts. Did the state court also say here that even if they had considered the affidavits, that it wouldn't change their ruling? Yes, they did say that. But I think we also, that gets into a bigger point about what evidence was necessary to get an evidentiary hearing on the record. Because as the state was just arguing, there isn't a lot on the record. And the state court sort of pinned itself into catch 22, where they were looking at this evidence and saying, well, this isn't enough, because you don't have more on the record. It wasn't just that the affidavits weren't sufficient in and of itself for the state court. It's that there wasn't more behind them to substantiate them. So the evidentiary hearing here that we're requesting alternatively would not be asking this court to order an evidentiary hearing based on bare bones allegations. It would be requesting an evidentiary hearing as a form of habeas relief in and of itself. Because when the state court denied his request for an evidentiary hearing below, they had to have necessarily looked at the chronic and the strickland standards. And Judge Stranch, like you said, there were undisputed affidavits on the board. And whether or not we think that they are substantial enough to reward direct relief that he had ineffective assistance of counsel, there's certainly enough that he could have had ineffective assistance of counsel. And if he could have had ineffective assistance of counsel, then more would have needed to be on the record for the state court to look at it. The state court didn't allow that. So when the state court denied his request for an evidentiary hearing, it was unreasonably applying strickland and chronic to this case. Which is your U.S. Supreme Court case that you think they're violating on prejudice? You can't use Sixth Circuit cases, right? You've got to use a U.S. Supreme Court case. Which is the U.S. Supreme Court prejudice case that the Michigan Court of Appeals flagrantly violated? Are you saying violated for the evidentiary? No, no, no, on prejudice. On prejudice generally? Yes. Well, I think when we look back to strickland, and we look back at the core holding of it, what does strickland say? Strickland says that you are prejudiced when you have been, the entire trial is fundamentally unfair. That is when you've been prejudiced. So it's strickland that they're unreasonably applying. Yeah, under strickland. Not some other U.S. Supreme Court interpretation of strickland. Yeah, under the strickland standard, which is a clearly established principle. There doesn't need to be, sorry. Of course. I was thinking you might have another case that was, you know, had more parallels to this one. But if strickland's your prejudice case, that's your prejudice case. Well, and I understand your point that we have to look to the Supreme Court's case law for the clearly established law. But we can look to the Sixth Circuit President to show how those clearly established principles function in real life. The Sixth Circuit has said many times that failure to impeach a key witness would result in prejudice. They've said many times that when you have a weak case that has based purely on, that is tied together by one witness, there is substantial prejudice if you are not following through and doing everything you can to undermine that witness's testimony. So, Your Honors, I see with my last 30 seconds, I just wanted to sum up my point really quickly. Johnny Taylor was denied effective assistance of counsel completely through the pretrial period. His counsel failed to investigate many leads during the pretrial period that resulted in substantial prejudice to him at trial. And if you believe there isn't enough on the record to grant his straight petition for habeas relief, I believe you should remand to the District Court to give him an evidentiary hearing as a form of habeas relief in and of itself. Thank you. All right, thank you. Thanks to both of you for your helpful briefs and arguments. We appreciate it.